320 So.2d 7 (1975)
AUTOMATIC TRUCK AND TRAILER WASH CENTERS, INC., Appellant
v.
EASTAMP, INC., et al., Appellees.
No. 74-1347.
District Court of Appeal of Florida, Second District.
October 15, 1975.
*8 Richard A. Lazzara and Michael J. Freedman of Levine, Freedman Hirsch, Tampa, for appellant.
Raymond C. Farfante, Jr., of Griffin, Gillis, Stead & Farfante, Tampa, for appellee, Eastamp, Inc.
Harold H. Griffin and Jan G. Halisky of Griffin & Uber, Clearwater, for appellees, Bryan Management Services, Inc. and W.E. Bryan.
McNULTY, Chief Judge.
The novel question we answer this day is whether a secured creditor is entitled to the benefits of Article 6 of the Uniform Commercial Code (codified in this state as Chapter 676, F.S. 1973) relating to bulk transfers, and thus is not limited solely to the remedies provided for in Article 9 thereof (Chapter 679, F.S. 1973) relating to secured transactions. We answer the question in the affirmative.
Appellant, Automatic Truck and Trailer Wash Centers, Inc., sold an automatic truck and trailer washer to J.H.R. Management Co., Inc., which operated "301 Truck Stop," and retained a $50,000 purchase money security interest therein. Subsequently, J.H.R. Management sold the truck stop to appellee Eastamp, Inc., but excluded from the sale the aforesaid automatic truck and trailer washer. Appellees Bryan and Bryan Management Services, Inc. acted as escrow agents in the transaction.
Significantly, all appellees knew that appellant was a creditor of J.H.R. Management but, notwithstanding, while the bulk transfer provisions of the U.C.C. were otherwise substantially complied with, no notice was given to appellant as is required by § 676.105, F.S. 1973. This, ordinarily under the Code, would render the transfer "ineffective" as to protected "creditors" of the transferor.[1]
Some time after selling the business, J.H.R. Management defaulted on its obligation to appellant and appellant foreclosed on its security interest in the washer pursuant *9 to its rights as a secured creditor under Article 9 of the Code. Unfortunately, ever-popular automatic truck and trailer washers apparently having glutted the market, only $2,000 was realized at the foreclosure sale resulting in a deficiency of some $41,000, which appellant seeks herein jointly and severally to recover from appellees under the aforementioned "ineffective" transfer provisions of Article 6.
The trial court entered summary judgment in favor of appellees holding that appellant's rights were exclusively governed by the provisions of Article 9 of the Code relating to secured creditors and that appellant was not entitled to the benefits provided for in Article 6 which, he held, protects only unsecured creditors. We disagree.
While, as indicated, there are no cases in Florida on the point, and a dearth of cases elsewhere, respected commentators suggest that the bulk transfer provisions of the Code are broad enough to cover both secured and unsecured creditors.[2] To begin with, throughout the Code "creditors" are almost totally referred to by just such term and without qualification; and a creditor is defined in § 671.201, F.S. 1973, the general definition section of the Code, as follows:
"Subject to additional definitions contained in the subsequent chapters of this code which are applicable to specific chapters or parts thereof, and unless the context otherwise requires, in this code:
* * * * * *
(12) `Creditor' includes a general creditor, a secured creditor, a lien creditor and any representative of creditors, including an assignee for the benefit of creditors, a trustee in bankruptcy, a receiver in equity and an executor or administrator of an insolvent debtor's or assignor's estate." (Italics ours.)
Nothing in Article 6 alters this definition or "otherwise requires" a different interpretation.
Secondly, there is nothing in Article 9 of the Code to suggest that that article is the exclusive guardian of secured creditors. Moreover, we do not think that overlapping protection runs afoul of Code policy. As one commentary points out:[3]
"In contrast to Article 9 of the Code, which is designed to protect the secured creditor against the destruction of his security by a third person, generally, the trustee in bankruptcy, Article 6 is designed to protect the unsecured creditor against a fraudulent transfer of the goods by the very debtor-customer to whom he has extended credit. On the one hand, a secured creditor's interest against his debtor is protected at the time the creditor's interest attaches in the debtor's property, even though such interest, if not perfected, may be lost against third parties. On the other hand, an unsecured creditor relies heavily on the net worth of his debtor as represented by his stock in trade. However, mindful of the fact that a secured creditor may have an unsecured deficiency, the Code includes the secured creditor in its broad scope of the definition of creditor and thereby assures him of an opportunity to participate in the benefits of the bulk transfer rules." (Italic ours.)
Finally, as a sort of inverse negative pregnant, appellees point to no persuasive *10 reason why secured creditors should not be protected under Article 6 of the Code.
We hold, therefore, that secured creditors are entitled to the benefits of Ch. 676, supra, the bulk transfer provisions of the U.C.C.
The sub-question to be answered now, which assumes an affirmative answer to the threshold question answered above, is whether the truck stop by J.H.R. Management Co. herein was indeed a business subject to the bulk transfer provisions of the Code. At oral argument appellees urged that, even assuming a secured creditor is protected under Article 6 of the Code, the transfer in this case involved a business primarily dealing in services, not in the sale of merchandise, and that therefore the provisions of Article 6 are inapplicable.
The point may be well taken, for § 676.102(3), F.S. 1973, provided that:
"The enterprises subject to this chapter are all those whose principal business is the sale of merchandise from stock, including those who manufacture what they sell." (Italic ours.)
Additionally, the Third District recently held in De La Rosa v. Tropical Sandwiches, Inc.[4] that Article 6 of the Code excludes businesses principally dealing in "services."
But the trial court in this case never reached that sub-question. The summary judgment herein was predicated on the erroneous conclusion of law that appellant could not avail itself of the provisions of Article 6. It was therefore entered prematurely. Obviously, now, a material issue of fact exists as to whether the sub-question should also be answered in the affirmative.
Accordingly, the summary judgment appealed from herein should be, and the same is hereby, reversed; and the cause is remanded for further proceedings not inconsistent herewith.
GRIMES and SCHEB, JJ., concur.
NOTES
[1] Section 676.105, F.S. 1973.
[2] See J. White and R. Summers, Uniform Commercial Code p. 656 (1972); 2 P. Coogan, W. Hogan, and D. Vagts, Secured Transactions Under the Uniform Commercial Code § 22.01 (1966).
[3] Id. Secured Transactions Under the Uniform Commercial Code § 22.01 (1966).
[4] (Fla.App.3d, 1974), 298 So.2d 471. Section 676.102(3), F.S. 1973, was amended in 1975, Ch. 75-216 Laws of Florida, expressly to include restaurants under the act even though they deal largely in services. De La Rosa, however, still correctly states the law that businesses principally dealing in services are not included in the act. Obviously, restaurants are now legislatively declared to be businesses principally dealing in sales of merchandise.